IN THE UNITED STATES DISTRICT COURT DISTRICT FOR THE
NORTHERN DISTRICT OF ALABAMA

CHRIS SEVIER, JOHN GUNTER
JR, WHITNEY KOHL, JOAN
GRACE HARLEY

V.

Case No: 2:17-cv-01473-SGC

KAY IVEY, in her official capacity
as Governor of Alabama; STEVE
MARSHALL, in his official capacity
as Attorney General of Alabama;
CHRIS GREEN, in his official
capacity as County Commissioner
of Blount County

## NOTICE OF FILING LEGISLATIVE FACTS ON THE MARRIAGE AND CONSTITUTION RESTORATION ACT

http://www.patheos.com/blogs/friendlyatheist/2018/02/16/wyoming-republicans-bill-defines-non-straight-unions-as-parody-marriages/

NOW COMES Plaintiff Sevier providing notice of relevant legislative facts.

"Court of appeals [or a District Court] can take judicial notice of legislative facts."

*Landell v. Sorrell,* 382 S3d. 91 (2nd Cir 2004). *Lebron v. Secretary of Florida,* 772

F3d 1352 (11th. Cir 2014). *Brand v. Motley,* 526 F.3d 921, 923 (6th Cir. 2008).

Out of this litigation the Plaintiffs have authored an Act to be entitled the Marriage And Constitution Restoration Act. Rep. Lone and others of Wyoming introduced HB 0167 - an act entitled the Marriage And Constitution Restoration Act. Rep. Long and others from South Carolina introduced HB 4949 - an act entitled the Marriage And Constitution Restoration Act. The members of the Special Forces Of Liberty co-authored the act with those states and twenty five others. The Federal Congress will be introducing this act as well. After direct consultation, POTUS is supportive.

This State will be introducing this act that was authored out of this litigation. The Plaintiffs secured House and Senate Sponsors shortly after filing this lawsuit. However, because the Plaintiffs are pushing comprehensive Human Trafficking legislation in this State - the Plaintiffs were intending to hold off introduction of the Marriage Restoration Act until the passage of the first bill. That is no longer the case.

The Defendants are put on notice that defending against the Plaintiffs cause of action is beyond asinine. Not only is defending against the Plaintiffs here a direct violation of their duties under Article VI of the United States Constitution. The Attorney Generals office will soon have to be defending the Marriage And Constitution Act, which the Defendants are opposing in this case for reasons that

are invalidated in view of their duties owed under Article VI. The Plaintffs understand that this State does not want to defend against the Plaintiffs Establishment Clause claims and that it feels that it must, but that feeling is misguided. Advancing an immoral abuse of the Fourteenth Amendment is merely compounding immorality. The Defendants should not give any Obama appointed Judge any excuse to perpetuate a ploy and an unprincipled misapplication of the Fourteenth Amendment. Justice Roberts was wrong in Obergefell when he said that "times can blind." The religion of Secular Humanism blinds, and many Secular Humanist Judges are looking for any excuse to keep a charade that they endorsed going so that they do not become embarrassed in public - losing trust.

Yet, the fact that South Carolina and Wyoming introduced the Marriage And Constitution Restoration Act on the same day is direct evidence that this lawsuit is very much rife with merit. Any chance of avoiding these claims is only going to back fire. This is because the Plaintiffs are on the right side of reality and the Constitution. The introduction of these bills is per se evidence that the Defendants should immediately stop defending against the Plaintiffs Establishment Clause claims and agree to be enjoined.

As much as the Special Forces Of Liberty enjoin serving as De Facto Attorney Generals for this State, they just assume that the State's Attorney General

do his job and honor Article VI. For the reasons in the motions summary judgment and the amicus briefs filed into this Court docket, take with the Marriage And Constitution Restoration Act, the Defendants should agree to be enjoined along with the other South States that are subjected to a similar related cause. Since Judicial activists who are devout members of the Religion of Secular Humanism made up the idea that gay marriage policy must be imposed on all 50 states under the Fourteenth Amendment, let them defend their collapsing putsch in the face of this State's decision to be enjoined. The Plaintiffs know all too well that no state wants to go first in agreeing to be enjoined but this State should manifest the character to do so and then sit back and watch the dominos fall.

The reason why it is unwise for President Obama and Eric Holder to use Saul Alinsky's rules for radicals in setting up *Windsor* and *Obergefell* through their collusion with the ACLU and the Secular Humanist church is because - now that they are no longer in power - the same tactics can be used against them. The difference with a distinction is that gay marriage policy really is a non-secular sham that cultivates and indefensible legal weapon against non-observers and that excessively entangles the government with the religion of Secular Humanism. There is no honor in the Defendants' decision to defend a ploy. This is especially true when the fake gay civil rights movement impeaches the integrity of the

race-based civil rights movement lead by Pastor Martin Luther King Jr.. See the Amicus Brief of the National Alliance of Black Pastors. For any government official to pretend that the gay civil rights movement is equal to the race civil rights movement, whereas the race civil rights movement is actually based on immutability, is an act of racial animus in kind that is incredibly emotionally, intellectually, racially, and sexually exploitative. This State should stop engaging in racism in kind. This State should agree to be enjoined and start preparing to defend the Marriage And Constitution Restoration Act for the reasons set forth by the Plaintiffs in their motions for summary judgment, the declarants in their sworn statements, and the amicus filers in their briefs. After direct consultation, POTUS agrees with the Plaintiffs. So does members of Congress who will be introducing the Marriage And Constitution Restoration Act as well in due course. Notice is given, and a demand that the Defendants comply with their duties under Article VI is served.

/s/Chris Sevier Esq./
BPR#26577
9 Music Square South
Nashville, TN 37203
(615) 500 4411
ghostwarsmusic@gmail.com
420 w 42nd St
New York, NY 10036
Humantraffickingpreventionact.com

## CERTIFICATE OF SERVICE

A true copy of the foregoing will be served electronically via email to the email of record on ECF upon all counsel of record and is also being served via First Class Mail and/or electronic mail upon the following on this the 26th day of December 25, 2017: Brad A. Chynoweth State of Alabama Office of the Attorney General 501 Washington Avenue Post Office Box 300152 Montgomery, AL 36130 334.242.7997 Fax: 334.353.8440 Email: bchynoweth@ago.state.al.us; Jamie Helen Kidd WEBB & ELEY PC 7475 Halcyon Pointe Drive P O Box 240909 Montgomery, AL 36124 334-262-1850 Fax: 334-262-1772 Email: JKidd@webbeley.com

/s/Chris Sevier Esq./

South Carolina General Assembly
122nd Session, 2017-2018

Download This Bill in Microsoft Word format

~~Indicates Matter Stricken~~
Indicates New Matter

H. 4949

STATUS INFORMATION

General Bill
Sponsors: Reps. Long, Chumley, Burns, McCravy, Magnuson and Martin
Document Path: l:\council\bills\nbd\11240vr18.docx

Introduced in the House on February 15, 2018
Currently residing in the House Committee on **Judiciary**

Summary: Not yet available

HISTORY OF LEGISLATIVE ACTIONS

```
    Date      Body   Action Description with journal page number
-------------------------------------------------------------------
   2/15/2018  House  Introduced and read first time
   2/15/2018  House  Referred to Committee on Judiciary
```

View the latest legislative information at the website

VERSIONS OF THIS BILL

2/15/2018

(Text matches printed bills. Document has been reformatted to meet World Wide Web specifications.)

# A BILL

TO AMEND THE CODE OF LAWS OF SOUTH CAROLINA, 1976, BY ADDING SECTION 20-1-110 SO AS TO ENACT THE "MARRIAGE AND CONSTITUTION RESTORATION ACT"; TO DEFINE CERTAIN TERMS, INCLUDING "PARODY MARRIAGE" AND "MARRIAGE"; TO PROVIDE THAT PARODY MARRIAGE POLICIES ARE NONSECULAR IN NATURE; TO PROHIBIT THE STATE FROM RESPECTING, ENDORSING, OR RECOGNIZING ANY PARODY MARRIAGE POLICY OR POLICIES THAT TREAT SEXUAL ORIENTATION AS A SUSPECT CLASS; AND FOR OTHER PURPOSES.

Whereas, parody marriages and parody marriage policies are nonsecular for the purposes of the Establishment Clause; and

Whereas, marriages between a man and a woman and policies that endorse marriage between a man and a woman are secular in nature for purposes of the Establishment Clause; and

Whereas, civilizations for millennia have defined marriage as a union between a man and a woman; and

Whereas, marriage between and man and a woman arose out of the nature of things and marriage between a man and a woman is natural, neutral, and noncontroversial, unlike parody forms of marriage; and

Whereas, the State of South Carolina has a duty under Article VI of the United States Constitution to uphold the United States Constitution; and

Whereas, the First Amendment applies to the State of South Carolina through the Fourteenth Amendment; and

Whereas, the First Amendment, not the Fourteenth Amendment, has exclusive jurisdiction over which types of marriages the State can endorse, respect, and recognize; and

Whereas, all forms of parody marriage and all self-asserted sex-based identity narratives and sexual orientations that fail to check out the human design are part of the religion of Secular Humanism; and

Whereas, the United States Supreme Court has found that Secular Humanism is a religion for the purpose of the Establishment Clause in Torcaso v. Watkins, 367 U.S. 488 (1961), and Edwards v. Aguillard, 482 U.S. 578 (1987); and

Whereas, the State of South Carolina is prohibited from favoring or endorsing religion over nonreligion; and

Whereas, the State of South Carolina's decision to respect, endorse, and recognize parody marriages and sexual orientation policies has excessively entangled the government with the religion of Secular Humanism, failed to accomplish its intended purpose, and created an indefensible legal weapon against nonobservers; and

Whereas, in the wake of Obergefell v. Hodges, 135 S. Ct. 2584 (2015), there has not been a land rush on gay marriage, but there has been a land rush on the persecution of nonobservers by Secular Humanists and an effort by Secular Humanists to infiltrate and indoctrinate minors in public schools to their religious world view which is questionably moral, plausible, obscene, and is not secular; and

Whereas, it is unsettled whether or not sexual orientation is immutable or genetic and is therefore a matter of faith; and

Whereas, parody marriages have never been a part of American tradition and heritage; and

Whereas, parody marriage policies and sexual orientation statutes are nonsecular and policies that respect, endorse, and recognize a marriage between a man and a woman are secular, accomplishing its intended objective. Now, therefore,

Be it enacted by the General Assembly of the State of South Carolina:

SECTION    1.    This act may be known and cited as the "Marriage and Constitution Restoration Act".

SECTION    2.    Article 1, Chapter 1, Title 20 of the 1976 Code is amended by adding:

"Section 20-1-110.    (A)    For purposes of this section,

(1)    'Parody marriage' means any form of marriage that does not involve one man and one woman.

(2)    'Nonsecular policy' means state action which endorses, respects, and recognizes the beliefs of a particular religion where the preeminent and primary force driving the state's action is not genuine, but a sham that ultimately has a primary religious objective.

(3)    'Secular policy' means state action that is natural, neutral, noncontroversial and that is based on self-evident truth. Secular policy accomplishes its goals and purposes. State action where the preeminent and primary force driving the policy is genuine, not a sham, and not merely secondary to a religious objective.

(4)    'Sexual orientation' means a self-asserted sex-based identity narrative that is based on a series of naked assertions and unproven faith-based assumptions that are implicitly religious.

(5)    'Marriage' means a union of one man and one woman.

(B)(1)    In view of the First Amendment's Freedom of Expression Clause of the United States Constitution and the Constitution of South Carolina, 1895:

(a)    any person living in South Carolina can cultivate any self-asserted sex-based identity narrative or self-asserted sexual orientation at will, even if it does not check out with the human design as a matter of self-evident observation.

(b)    any person can conduct any form of marriage ceremony and other rituals that accords with their self-asserted sexual orientation and live as married persons do, as long as the ceremonies do not conflict with other parts of the South Carolina Code and federal law.

(2)    In view of the First Amendment's Establishment Clause of the United States Constitution and the Constitution of South Carolina, 1895:

(a)    the State of South Carolina shall no longer respect, endorse, or recognize any form of parody marriage policy because parody marriage policies are nonsecular.

(b)    the State of South Carolina shall no longer enforce, recognize, or respect any policy that treats sexual orientation as a suspect class because all such statutes lack a secular purpose.

(C)    The State of South Carolina will continue to enforce, endorse, and recognize marriages between a man and a woman because such marriage policies are secular, accomplishing nonreligious objectives."

SECTION    2.    This act takes effect upon approval by the Governor.

----XX----

This web page was last updated on February 15, 2018 at 1:08 PM

2018                    STATE OF WYOMING                    18LSO-0490

HOUSE BILL NO. HB0167

The Marriage and Constitution Restoration Act.

Sponsored by: Representative(s) Lone and Edwards

A BILL

for

1  AN ACT relating to marriage and sexual orientation;
2  prohibiting any state action that treats sexual orientation
3  as a suspect class; prohibiting the state and its political
4  subdivisions from granting, endorsing, respecting or
5  recognizing any marriage not between a man and woman;
6  providing legislative findings; and providing for an
7  effective date.
8
9  *Be It Enacted by the Legislature of the State of Wyoming:*
10
11      **Section 1.**
12
13      (a)  The legislature finds that:
14
15          (i) Parody marriages and policies that endorse
16  parody marriages are nonsecular in nature for purposes of

1  the Establishment Clause of the First Amendment to the
2  United States Constitution;
3
4          (ii) Marriages between a man and a woman and
5  policies that endorse marriages between a man and a women
6  are secular in nature for purposes of the Establishment
7  Clause of the First Amendment to the United States
8  Constitution;
9
10         (iii) Civilizations for millennia have defined
11 marriage as a union between a man and a woman;
12
13         (iv) Marriage between a man and a woman arose
14 out of the nature of things and is natural, neutral and
15 noncontroversial unlike parody marriages;
16
17         (v) The state of Wyoming has a duty under
18 article 6 of the United States Constitution to uphold the
19 United States Constitution;
20
21         (vi) The First Amendment applies to the state of
22 Wyoming through the Fourteenth Amendment to the United
23 State Constitution;

2018               STATE OF WYOMING                 18LSO-0490

(vii) The First Amendment to the United States Constitution has exclusive jurisdiction over which types of marriages the state can endorse, respect and recognize;

(viii) All forms of parody marriage and all nonheterosexual sexual orientations or self asserted sex based identify narratives that fail to check out with the human design are part of the religion of secular humanism;

(ix) In *Torcaso v. Watkins*, 367 U.S. 488 (1961), and *Edwards v. Aguillard*, 482 U.S. 578 (1987), the United States Supreme Court found that secular humanism is a religion for purposes of the Establishment Clause of the First Amendment to the United States Constitution;

(x) The state of Wyoming is prohibited from endorsing or favoring religion over nonreligion;

(xi) The state of Wyoming's decision to respect, endorse and recognize parody marriages and sexual orientation policies has excessively entangled the government with the religion of secular humanism, failed to

1  accomplish its intended purpose and created an indefensible
2  legal weapon against nonobservers;
3
4          (xii)  In the wake of *Obergefell v. Hodges*, 135
5  S. Ct. 2584 (2015), there has not been a land rush on same
6  sex marriage but there has been a land rush on the
7  persecution of nonobservers by secular humanists and an
8  effort by secular humanists to infiltrate and indoctrinate
9  minors in public schools to their religious worldview which
10 is obscene and questionably moral and plausible;
11
12         (xiii)  It is unsettled whether sexual
13 orientation is immutable or genetic and is therefore a
14 matter of faith;
15
16         (xiv)  Parody marriages have never been a part of
17 American tradition and heritage;
18
19         (xv)  All forms of parody marriage erode
20 community standards of decency, and this state has a
21 compelling interest to uphold community standards of
22 decency as set forth under the Wyoming Constitution;
23

1              (xvi)  Parody marriage policies and statutes
2    treating nonheterosexual people as a suspect class
3    constitute nonsecular state action, and policies that
4    respect, endorse and recognize a marriage between a man and
5    a woman constitute secular state action and accomplishes
6    their intended objective;

7

8              (xvii)  In view of the Free Exercise Clauses of
9    the First Amendment to the United States Constitution and
10   the Wyoming Constitution:

11

12                  (A)  Any person in Wyoming may cultivate any
13   sexual orientation or self asserted sex based identity
14   narrative at-will, even if it does not check out with the
15   human design as a matter of self evident observation;

16

17                  (B)  Any person in Wyoming may conduct any
18   form of marriage ceremony to include parody marriage
19   ceremonies and other rituals that accord with their self
20   asserted sexual orientation or other sex asserted sex based
21   identity narrative and live as married persons do as long
22   as the ceremonies do not conflict with other parts of state
23   and federal law;

1

2                    (C)  The state of Wyoming shall no longer
3    respect, endorse or recognize any parody marriage policies
4    because such policies constitute nonsecular state action;

5

6                    (D)  The state of Wyoming shall no longer
7    enforce, recognize or respect any policies that treat self
8    asserted sexual orientation as a suspect class because such
9    policies constitute nonsecular state action.

10

11        (b)  As used in this section:

12

13            (i)  "Nonsecular state action" means any state
14   action that endorses, respects and recognizes the beliefs
15   of a particular religion where the preeminent and primary
16   force driving the state action is not genuine but is a sham
17   that ultimately has a primarily religious objective;

18

19            (ii)  "Parody marriage" means any form of
20   marriage not between a male and a female person;

21

22            (iii)  "Secular state action" means any state
23   action that is natural, neutral, noncontroversial and based

1  on self evident truth and whose primary driving force is
2  genuine, not a sham and not merely secondary to a religious
3  objective.
4
5        **Section 2.**  W.S. 9-23-101 is created to read:
6
7                      CHAPTER 23
8                  SEXUAL ORIENTATION
9
10       **9-23-101.  Sexual   orientation   laws   and   policies**
11  **prohibited.**
12
13  Notwithstanding any other provision of law, the state and
14  its political subdivisions shall not enact, enforce,
15  respect or recognize any law or policy that treats sexual
16  orientation as a suspect class, because action constitutes
17  nonsecular state action that exclusively entangles the
18  state with the religion of secular humanism. As used in
19  this section, "nonsecular state action" means any state
20  action that endorses, respects and recognizes the beliefs
21  of a particular religion where the preeminent and primary
22  force driving the state action is not genuine but is a sham
23  that ultimately has a primarily religious objective.

2018                    STATE OF WYOMING                    18LSO-0490

1

2          **Section 3.**  W.S. 20-1-101 is amended to read:

3

4          **20-1-101. Marriage a civil contract.**

5

6          (a)  Marriage is a civil contract between a male and a
7   female person to which the consent of the parties capable
8   of contracting is essential. Notwithstanding any other
9   provision of law, the state and its political subdivisions
10  shall not grant, endorse, respect or recognize any form of
11  parody marriage, because such action constitutes nonsecular
12  state action. The state and its political subdivisions
13  shall continue to grant and recognize marriages between a
14  male and a female person because such action constitutes
15  secular state action which accomplishes its intended
16  purposes. As used in this section:

17

18          (i)  "Nonsecular state action" means any state
19  action that endorses, respects and recognizes the beliefs
20  of a particular religion where the preeminent and primary
21  force driving the state action is not genuine but is a sham
22  that ultimately has a primarily religious objective;

23

1       (ii) "Parody marriage" means any form of
2 marriage not between a male and a female person;

4       (iii) "Secular state action" means any state
5 action that is natural, neutral, noncontroversial and based
6 on self evident truth and whose primary driving force is
7 genuine, not a sham and not merely secondary to a religious
8 objective.

10    **Section 4.** This act is effective July 1, 2018.

12                              (END)

# Wyoming Republican's Bill Defines Non-Straight Unions as "Parody Marriages"

February 16, 2018 by Hemant Mehta
0 Comments

A bill introduced in the Wyoming State House on Valentine's Day refers to gay and lesbians unions as "parody marriages" and implies that transgender people contradict "human design." It also deems LGBTQ people, by their very identities, as "part of the religion of secular humanism," stating that Wyoming shouldn't recognize their orientation because it would therefore be an endorsement of Secular Humanism, violating the First Amendment of the Constitution. (If that sounds like some extremely twisted logic, that's because it is.)



HB0167, the Marriage and Constitution Restoration Act, is sponsored by **State Rep. Lars Lone** and co-sponsored by **State Rep. Roy Edwards** (both Republicans, in case you hadn't figured that out).

It's a bill you have to read to believe.

> **All forms of parody marriage and all nonheterosexual sexual orientations or self asserted sex based identify narratives that fail to check out with the human design are part of the religion of secular humanism;**
>
> …
>
> All forms of parody marriage **erode community standards of decency**, and this state has a compelling interest to uphold community standards of decency as set forth under the Wyoming Constitution;
>
> …
>
> **The state of Wyoming shall no longer respect, endorse or recognize any parody marriage policies because such policies constitute nonsecular state action;**
>
> …
>
> **The state of Wyoming shall no longer enforce, recognize or respect any policies that treat self asserted sexual orientation as a suspect class because such policies constitute nonsecular state action.**

This bill, in one fell swoop, says Wyoming shouldn't recognize same-sex marriages, uphold anti-discrimination measures protecting LGBTQ people, or back legislation allowing transgender people to pee in the correct bathrooms in public places.

No action has been taken on this bill yet, but the ACLU of Wyoming released a short video on Twitter featuring one person just reading parts of the text aloud, then calling it a "parody bill."

> #WyLeg House Bill 167 would chip away at the rights of Wyoming's LGBT community – and deem same-sex marriages a 'parody' because they don't 'check out with the human design.' Wyomingites disagree. #ParodyMarriage pic.twitter.com/tatTcqbism
>
> — ACLU of Wyoming (@ACLUWYO) February 16, 2018

It's hard to see how this bill would pass any constitutional muster, given that same-sex marriages have already been declared legal throughout the country and LGBTQ people exist whether Republicans like it or not, but if passed, it would go into effect on July 1.

Incidentally, the official bios for Lone and Edwards include their religious affiliations. Lone is a Christian. Edwards is an Independent Baptist. Those may be the least shocking parts about this whole story. You almost have to be religious to have this much anti-LGBTQ hate in your heart.